**IN THE UNITED STATES COURT
FOR THE EASTERN DISTRICT OF TEXAS
Tyler Division**

| | |
|---|---|
| **RAYLON, LLC,**<br><br>        **Plaintiff,**<br><br>        **vs.**<br><br>**COMPLUS DATA INNOVATIONS, et al.**<br>        **Defendants.** | **C.A. No. 6:09-cv-355**<br>**(Davis)(Patent)** |
| **RAYLON, LLC,**<br><br>        **Plaintiff,**<br><br>        **vs.**<br><br>**EZ TAG CORPORATION, et al.**<br>        **Defendants.** | **C.A. No. 6:09-cv-357**<br>**(Davis)(Patent)** |

**PLAINTIFF'S RESPONSE BRIEF ON CLAIM CONSTRUCTION ISSUES IN
RESPONSE TO SYMBOL TECHNOLOGIES, INC. *AMICUS CURIAE*
CLAIM CONSTRUCTION BRIEFING**

D. Scott Hemingway
TX Bar No. 09407880
Eugenia S. Hansen
Hemingway & Hansen, LLP
1717 Main Street, Ste. 2500
Dallas, Texas  75225
(214) 292-8301
(214) 739-5209 (fax)
d.hemingway@gte.net
shemingway@hemlaw.org

Corby D. Bell
Texas Bar No. 24036208
Garlitz Bell LLP
3010 LBJ Freeway, Ste. 990
Dallas, TX  75234
(214) 736-7168
(214) 389-4014 (fax)
corby@garlitzbell.com

NOW COMES Plaintiff, Raylon, and LLC (hereafter referred to as "Raylon" and files this Response Brief on Claim Construction Issues in Response to the Symbol Technologies, Inc. *Amicus Curiae* Claim Construction Briefing permitted under Court Order as follows:

## I.    INTRODUCTION

Symbol Technologies joins the other Defendants in advocating claim constructions that would require this Court to ignore established Federal Circuit precedent on how claim terms should be interpreted. For instance, Symbol Technologies, and the other Defendants in this action, contend that the claim terms "comprising," "a" and "said" should be interpreted to restrict the scope of the '589 Patent claims to a single, unitary housing structure. There are several reasons the Defendants' proposed constructions should be rejected -- the claim term "housing" in the '589 Patent should be defined without regard to the infringement arguments improperly raised by the Defendants at this stage in the proceedings.

First, the "housing" in the '589 Patent is not claimed in the manner advocated by the Defendant. Contrary to the interpretations advocated by the Defendants, the "housing" claims do not limit the structures or claim a "single" "unitary" housing structure – whatever "single" and "unitary" might mean. In contrast to a restrictive manner of claiming a "housing," the '589 Patent claims do not define the "housing" by the specific structures, number, relationship of certain walls.[1] The Defendants' advocated positions would ignore the fact that the term

---

[1] For a typical restrictive definition of a single "housing," the Court is directed to the prior art patent cited in the Symbol Technologies Amicus Curiae Claim Construction Brief. U.S. Patent No. 4,828,406, Claim 1, Col. 15, *Exhibit 2 to Symbol's Brief, Exhibit 4 hereto ("a storage magazine including: opposed sidewalls; an endwall; an alignment plate…; a bottom wall…; a resiliently loaded pressure plate).* The claimed subject matter in the '406 Patent specifically identifies the housing and would likely restrict the claim coverage to a single housing. The '589 Patent does not possess any such limitations or any limitations regarding "one" housing, "a single" housing, "a unitary" housing, or any other restrictive limitations regarding how the housing covers the elements housed therein.

"housing" in the '589 Patent claims is worded in an open-ended and non-restrictive manner. The '589 Patent claims a "housing," which is an enclosure or "something that covers, protects or supports components or parts."

Second, the Defendants' proposed constructions are contrary to controlling Federal Circuit precedent on how such claim terms should be interpreted. The Federal Circuit has repeatedly rejected the Defendants arguments in support of their proposed constructions. *Hyperphase Technologies, LLC v. Google, Inc.,* 260 Fed. Appx. 274, **11-13 (Fed. Cir. Dec. 26, 2007), *Scanner Techs. Corp. v. ICOS Vision Sys. Corp.*, 365 F.3d 1299, 1304 (Fed. Cir. 2004); and *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 977 (Fed. Cir. 1999). As set forth therein, the Federal Circuit has consistently held that the claim terms "comprising," "a" and "said" do not impose a limitation of "one and only one", "single" or "unitary" into the claimed subject matter.

Third, the Defendants' proposed construction ignores explicit statements in the '589 Patent specification that <u>repeatedly</u> express the fact that the Figure 1 embodiment shown in the patent is exemplary and not meant to restrict the scope of the claims. *See '589 Patent, Col. 4, ln. 37-43; Col. 2, lns. 21-49; Col. 6, ln. 60-Col. 7, ln. 7.* Among other statements, the '589 Patent states:

- "However, the housing may employ a variety of shapes and sizes"

- "In this respect, before explaining at least one embodiment of the invention in detail, it is to be understood that the invention is not limited in its application to the details of construction and to the arrangements of the components set forth in the following description or illustrated in the drawings"

- "The invention is capable of other embodiments and of being practiced and carried out in various ways,"

- "all equivalent relationships to those illustrated in the drawings and described in the specification are intended to be encompassed by the present invention,"

- "the foregoing is considered as illustrative only of the principles of the invention,"

- "Further, since numerous modifications and changes will readily occur to those skilled in the art, it is not desired to limit the invention to the exact construction and operation shown and described, and accordingly, all suitable modifications and equivalents may be resorted to, falling within the scope of the invention."

*Id.*

In advocating their "single," "unitary" housing construction, Symbol Technologies, and the other Defendants, have purposefully ignored the absence of limiting language in the '589 Patent claims, the established Federal Circuit precedent that rejects their position, and explicit statements in the '589 Patent specification that undermine their positions. The Defendants' overly-narrow claim constructions appear to be intended to provide future support their non-infringement arguments, which has "put the cart before the horse" as far as the proper procedures for construing the patent claims. The Defendants tactics should be rejected, and this Court should make its claim construction decision based on the relevant intrinsic and extrinsic evidence related to the '589 Patent.

## II.     ARGUMENT

The Plaintiff will address the primary issues raised by Symbol Technologies in its Amicus Curiae Claim Construction Brief. If the Plaintiff does not address or respond to a particular issue in this Reply Brief, the Plaintiff will maintain its initial positions expressed in the Opening Claim Construction Brief and the Joint Claim Construction Statement, and the Plaintiff opposes and does not acquiesce to the Defendants' claim construction positions. The Plaintiff incorporates its Reply Briefing in Response to the EZ Tag Corporation Claim Construction Brief and the Casio Computer Claim Construction Brief into this response. Also, to the extend necessary, the Plaintiff will also address any other issues at the Markman Claim Construction Hearing scheduled for December 2, 2010.

### A. "A" Housing Does Not Mean "Single" or "One and Only One" Housing

The parties respective positions on the term "housing" are set forth below. Symbol

|  | TERMS, PHRASES, OR CLAUSES | PLAINTIFF'S DEFINITION | DEFENDANTS' DEFINITION/ POSITIONS |
|---|---|---|---|
| 5 & 45a | "housing" and "a housing" | something that covers, protects, or supports components or parts | "a single, unitary enclosure." (Figs. 1-3 all showing a single housing; numerous specification references to "a housing" or "the housing" |

Technologies, and the other Defendants, have proposed numerous other claim constructions that depend on this Court restrictively defining "a housing" as "one and only one housing." *See e.g. Symbol's Claim Construction Brf., p. 6 (all components associated with the "same" singular housing).*

Contrary to the Defendants' proposed claim construction, the '589 Patent claims does not impose such "single unitary enclosure" limitations on the scope of the claims. Based on the intrinsic evidence and the actual claim language, the claims identify "a" "housing," which is something that covers, protects, or supports components or parts. *Plaintiff's Proposed Claim Construction.*

The Defendants' claim construction arguments are improper because their proposed "single, unitary" definitions seek to add extraneous limitations from one embodiment shown in the specification into the claim definitions. As this Court noted in *Commonwealth Sic. Ind. Res. v. Buffalo,* 2006 U.S. Dist. Lexis 26977 (E.D. Tex. May 8, 2006), "particular embodiments and examples appearing in the specification will not generally be read into the claims." *Id. at \*5-6 (Judge Davis) (citing Comark Commc'ns, Inc. v. Harris Corp.,* 156 F.3d 1182, 1187 (Fed. Cir. 1998) *(quoting Constant v. Advanced Micro-Devices, Inc.,* 848 F.2d 1560, 1571 (Fed. Cir. 1988)); and *Phillips*, 415 F.3d at 1323). In fact, the Federal Circuit has consistently warned

against importing limitations from the preferred embodiments to restrict the ordinary meaning of a patent claim term.[2]

The Federal Circuit has clearly expressed its rejection of the position that "a" in a "comprising" claim means "one and only one." Namely, the Federal Circuit has established the fact that a patent that uses "comprising" claim terms and does not expressly impose a "single" limitation on the claims should not be restrictively interpreted to mean "one and only one." *Hyperphase Technologies, LLC v. Google, Inc.,* 260 Fed. Appx. 274, **11-13 (Fed. Cir. Dec. 26, 2007),* (" 'a' in conjunction with 'comprising' and without narrowing language, such as 'one and only one,' typically encompasses both singular and plural possibilities")(*citing Scanner Techs. Corp. v. ICOS Vision Sys. Corp.*, 365 F.3d 1299, 1304 (Fed. Cir. 2004); *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 977 (Fed. Cir. 1999).)

The '589 Patent specification also rejects the Defendants' proposed restrictive definition of "a housing" as "one and only one" housing. In fact, the '589 Patent states as follows:

> The housing 12 may comprise a substantially rigid material such as, for example, a plastic or metal material. The housing 12 may also preferably water resistant permitting it to be used in adverse weather conditions. The housing 12 may measure approximately four inches in height, six inches in width and eleven inches in length. ***However, the housing may employ a variety of shapes and sizes.***
>
> \* \* \*
>
> In this respect, before explaining at least one embodiment of the invention in detail, ***it is to be understood that the invention is not limited in its application to the details of construction and to the arrangements of the components set forth in the following description or illustrated in the drawings. The invention is capable of other***

---

[2] *Arlington Indus, v. Bridgeport Fittings,* 345 F.3d 1318, 1327 (Fed. Cir. 2003); *see also, Specialty Composites v. Cabot Corp.,* 845 F.2d 981 (Fed. Cir. 1988) ("What is patented is not restricted to the examples" shown in the specification); *Internet America, Inc. v. Kee-Vet Laboratories, Inc.,* 887 F.2d 1050 (Fed. Cir. 1989)("limitations appearing in the specification will not be read into the claims," and "interpreting what is *meant* by a word *in* a claim 'is not to be confused with adding an extraneous limitation appearing in the specification, which is improper.'").

*embodiments and of being practiced and carried out in various ways.* Also, it is to be understood that the phraseology and terminology employed herein are for the purpose of description and should not be regarded as limiting.

As such, those skilled in the art will appreciate that the conception, upon which this disclosure is based, may readily be utilized as a basis for the designing of other structures, methods and systems for carrying out the several purposes of the present invention. *It is important, therefore, that the claims be regarded as including such equivalent constructions insofar as they do not depart from the spirit and scope of the present invention.*

Further, the purpose of the foregoing abstract is to enable the U.S. Patent and Trademark Office and the public generally, and especially the scientists, engineers and practitioners in the art who are not familiar with patent or legal terms or phraseology, to determine quickly from a cursory inspection the nature and essence of the technical disclosure of the application. *The abstract is neither intended to define the invention of the application, which is measured by the claims, nor is it intended to be limiting as to the scope of the invention in any way.*

\* \* \*

With respect to the above description then, it is to be realized that the optimum dimensional relationships for the parts of the invention, to include variations in size, materials, shape, form, function and manner of operation, assembly and use, are deemed readily apparent and obvious to one skilled in the art, and *all equivalent relationships to those illustrated in the drawings and described in the specification are intended to be encompassed by the present invention.*

*Therefore, the foregoing is considered as illustrative only of the principles of the invention. Further, since numerous modifications and changes will readily occur to those skilled in the art, it is not desired to limit the invention to the exact construction and operation shown and described, and accordingly, all suitable modifications and equivalents may be resorted to, falling within the scope of the invention.*

*The '589 Patent, Col. 4, ln. 37-43; Col. 2, lns. 21-49; Col. 6, ln. 60-Col. 7, ln. 7.*

Moreover, if the patent holder had wanted to restrictively define the term "housing" to a specific "single, unitary" structure, the patentee could have easily claimed the specific number, arrangement and relationship of side walls, end walls and plates to define the claim in a restrictive manner. This the patentee did not do. For example, a restrictively defined "housing" is claimed in the prior art patent attached to the Symbol Technologies Amicus Curiae Claim

Construction Brief. U.S. Patent No. 4,828,406, Claim 1, Col. 15, *Exhibit 2 to Symbol's Brief, Exhibit 4 hereto ("a storage magazine including: opposed sidewalls; an endwall; an alignment plate...; a bottom wall...; a resiliently loaded pressure plate).* The claimed subject matter in the '406 Patent specifically identifies the specific number, arrangement and relationship of various side walls, end walls and plates – and that claim would likely be restrictively interpreted to include a "single, unitary" housing with those defined structures. The '589 Patent does not include detailed claim language regarding the number, arrangement and relationship of side walls, end walls and plates to support such a restrictive construction.

Symbol Technologies also cites the '406 Patent as prior art that was allegedly cited to distinguish the '589 Patent from multiple housing systems. Symbol Technologies misses the target with this argument. The '406 Patent was cited to the Examiner and considered by the Examiner prior to allowance of the '589 Patent claims. But, the '406 Patent discloses <u>both</u> a single and multiple housing system when it states: "[w]hile the keyboard is shown as a unit separate from the main body of the device of the present invention, and connected thereto by an umbilical cable, *<u>the keyboard equally well could be incorporated into the cover of the device, such that the entire device is a unitary one."</u> Exhibit 4, '406 Patent, Col. 8, ln. 1-7.* Thus, Symbol Technologies is flat wrong when it argues that the '406 Patent was cited to distinguish multiple housing units from the '589 Patent -- the '406 Patent shows both and indicates that the a single housing and multiple housings are equivalent.

All together, the '589 Patent claims do not support the Defendants' claim construction, the case law does not support the Defendants' claim construction, and the statements in the '589 Patent specification do not support the Defendants' claim construction. The cited art identified by Symbol Technologies also does not support their positions on a "single, unitary" housing.

For the same reasons set forth by the Federal Circuit in *Hyperphase Technologies, Scanner Technologies, and Elkay,* this Court should reject the Defendants' claim construction proposal. "A" housing can be met by one or more structures or protective covers that individually, or collectively, "comprise" the "housing" limitation. For that reason, this Court should adopt the Plaintiff's proposed construction for "housing," which does not improperly limit the claim term "a housing" to "one and only one" housing.

**B.      Printer, Display, Card Reader, Slots and Input Assembly Terms**

The Defendants also contend that the "single, unitary housing" limitation be applied to the "printer," "display," "card reader," "slots," and "input assembly" limitations as well. The Defendants' proposed claim constructions are again advocated, not because the intrinsic and extrinsic evidence supports such a construction, but because the Defendants wish to support a future noninfringement arguments.

Symbol Technologies states that "there is not a single suggestion in the '589 Patent" that the elements disclosed in the '589 Patent could be "configured in a way other than all being associated with the same housing." *Symbol Amicus Brf., p. 9.* Symbol's characterization of the '589 Patent is, at best, a disingenuous description of what is set forth in the '589 Patent. For example, the '589 Patent specification repeatedly provides for variations in the Figure 1 embodiment as follows:

- "However, the housing may employ a variety of shapes and sizes"

- "In this respect, before explaining at least one embodiment of the invention in detail, it is to be understood that the invention is not limited in its application to the details of construction and to the arrangements of the components set forth in the following description or illustrated in the drawings"

- "The invention is capable of other embodiments and of being practiced and carried out in various ways,"

- "all equivalent relationships to those illustrated in the drawings and described in the specification are intended to be encompassed by the present invention,"

- "the foregoing is considered as illustrative only of the principles of the invention,"

- "Further, since numerous modifications and changes will readily occur to those skilled in the art, it is not desired to limit the invention to the exact construction and operation shown and described, and accordingly, all suitable modifications and equivalents may be resorted to, falling within the scope of the invention."

*See '589 Patent, Col. 4, ln. 37-43; Col. 2, lns. 21-49; Col. 6, ln. 60-Col. 7, ln. 7.* Symbol's Technologies does not cite to any of these statements in its briefing, and Symbol has to consciously ignore the explicit statements in the '589 Patent to support its arguments.

In fact, the Symbol Technologies proposed constructions epitomize the improper incorporation of limitations into the claims from particular embodiments and examples shown in the patent specification. *See Commonwealth Sic. Ind. Res. v. Buffalo,* 2006 U.S. Dist. Lexis 26977 (E.D. Tex. May 8, 2006), "particular embodiments and examples appearing in the specification will not generally be read into the claims." *Id. at *5-6 (Judge Davis) (citing Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (*quoting Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); and *Phillips*, 415 F.3d at 1323); *Arlington Indus, v. Bridgeport Fittings,* 345 F.3d 1318, 1327 (Fed. Cir. 2003); *see also, Specialty Composites v. Cabot Corp.,* 845 F.2d 981 (Fed. Cir. 1988) ("What is patented is not restricted to the examples" shown in the specification); *Internet America, Inc. v. Kee-Vet Laboratories, Inc.,* 887 F.2d 1050 (Fed. Cir. 1989)("limitations appearing in the specification will not be read into the claims," and "interpreting what is *meant* by a word *in* a claim 'is not to be confused with adding an extraneous limitation appearing in the specification, which is improper.'"). For all these reasons, imposing the "single, unitary" housing limitation on all these other claim terms would be improper.

The Plaintiff Raylon opposes the introduction of a "single, unitary" housing limitation into the "printer," "display," "card reader," "slots," and "input assembly" limitations. And, Plaintiff Raylon's position is joined by a large group of the Defendants in this matter. That is, Symbol Technologies advocates the introduction of this highly restrictive "single, unitary housing" definition into all these ancillary claim terms, but the other Defendants do not agree.

For instance, the Casio Defendants agreed with only one of Raylon's proposed definitions, which was Disputed Term no. 7 for "input assembly." Raylon's proposed definition for "input assembly" was "one or more parts or components for the inputting information into a device," and Casio indicated that it did not dispute this definition. *See Casio Claim Construction Brf., p. 20, Section IX, Input Assembly Terms ("Casio does not dispute Raylon's definition of Term 7").*[3] There was no incorporation of a "single, unitary housing" limitation in this proposed definition, yet the Casio Defendants, the Complus Defendants, and the Fujitsu Defendants appear to agree with Raylon that no "single, unitary housing" limitation is needed in this "input assembly" claim terms.[4] These Defendants, unlike Symbol, do not appear to advocate the

---

[3]  This is not the only inconsistent position raised between the Defendants. For instance, the Casio Defendants contend that the claims 1-15 and 17 are indefinite under 35 U.S.C. §112, ¶2 because the terms "printer means" and "paper advancing means" in the "printer assembly" are indefinite. Defendant EZ Tag, however, proposes a claim construction for these terms, and does not appear to take the position that these claim terms are indefinite. Likewise, Symbol Technologies also appears to disagree with the Casio Defendants position by offering a restrictive definition for these claim terms and not contending that these printer claim terms are indefinite.

[4]  Other co-defendants in the Raylon v. Symbol Technologies case do not appear to agree with Symbol's highly restrictive view of the '589 Patent. Namely, Defendants Applied Public Safety, Research in Motion, and Zebra printers have all settled with Raylon in the same matter Symbol Technologies is a named defendant. Significant settlement payments were received from these Defendants, who all sell or integrate components that would covered by the same strained noninfringement arguments presented by Symbol in its claim construction briefing. *See Exhibit 1, APS Article, Exhibit 2, APS Approved Hardware List (included Blackberry and Symbol products), Exhibit 3, mobile Zebra printers.*

introduction of a "single, unitary housing" claim limitation into the other disputed claim terms, such as "printer," "display," "card reader," "slots," and "input assembly" limitations.

Symbol Technologies' request for a wholesale addition of a "single, unitary housing" limitation into these "printer," "display," "card reader," "slots," and "input assembly" limitations, is therefore a highly unique position among the Defendants – one not accepted by the other Defendants in this action. The Symbol Technologies position should be rejected for the same reasons set forth above with respect to their "housing" proposal – it is not supported by the claim language, the statements in the '589 Patent specification, or Federal Circuit precedent. The Defendants claim constructions are advocated based on their desire to raise noninfringement arguments in the future. These noninfringement arguments do not justify the proposed claim constructions over the intrinsic and extrinsic evidence presented in these proceedings.[5]

### C. Elongated Slot Limitations

Symbol joins the other Defendants' positions regarding several other claim limitations, such as the elongated slot limitations. As shown on *Exhibit 3* to Raylon's Opening Claim Construction Brief, *Disputed Terms Chart,* the "elongated slot" claim dispute issues are shown as follows:

---

[5]  Symbol Technologies requests that this Court give no weight to the expert opinions provided by Raylon to support its proposed claim constructions. Symbol Technologies appeared in this matter almost one year ago, and was fully aware of the expert opinions of Mr. Jackson (a former patent examiner with forty-five years of IP practitioner experience) and Dr. Gary Sharp (an inventor with approximately sixty patents in the LCD-technology field) – each was provided to Symbol Technologies in their proceeding. Instead of retaining their own experts to provide rebuttal testimony, Symbol attacks the veracity of these expert opinions with empty rhetoric. Nothing raised in Symbol's arguments undermines the strength and veracity of the opinions expressed by Raylon's experts.

| | TERMS, PHRASES, OR CLAUSES | PLAINTIFF'S DEFINITION | DEFENDANTS' DEFINITION/ POSITIONS |
|---|---|---|---|
| 6. | "elongated slot" | An opening that is longer than it is wide | The Complus-case Defendants incorporate their proposed construction of this term in a more inclusive context below (term no. 47), and object to construing the term out of context.<br><br>If the court construes "elongated slot" alone, the construction should be: "a long narrow groove or opening." |
| 59. | "housing having an elongated slot for selectively receiving the identification card" | An opening on a housing that is longer than it is wide, and capable of receiving data or information from an external information source | The Complus-case Defendants incorporate their proposed construction of this term above (term no. 47). |
| 59EZ. | "housing having an elongated slot for selectively receiving the identification card" | (same as above) | An elongated slot in the computer through which the driver's license is swiped. |
| 47. | "elongated slot for selectively receiving the identification card" | An opening that is longer than it is wide | "a long narrow groove or opening that receives the card having computer readable magnetic tape." |

The Plaintiff's proposed definition for these terms would be, basically, an "opening that is longer than it is wide." The Plaintiff's definitions are fully supported by the '589 Patent specification, and these definitions will assist the jury with a better understanding of the claim elements – without unnecessarily incorporating extraneous and unnecessary limitations from the specification into the claims.

The Defendants' proposed definitions improperly attempt to incorporate limitations regarding a size to fit a card, the use of the slot with a driver's license, and other specific limitations that are not set forth in the claims. Further, the use of a quantitative term, such as "narrow," does not assist the jury in what would or would not satisfy such a limitation. The

Defendants' extreme and exaggerated positions about a wide slot are just that – exaggerations that the trier of fact can address at a later time. The Defendants' proposals should be rejected in favor of the Plaintiff proposed definitions, which the Plaintiff respectfully requests that the Court adopt its proposed claim constructions.

## III. CONCLUSION

The Plaintiff respectfully requests that this Court adopt its claim constructions, or adopt a variation of the Plaintiff's construction that is equivalent in scope and meaning.

Respectfully submitted,

Dated:  Nov. 20, 2010

/s/ D. Scott Hemingway
D. Scott Hemingway
TX Bar No. 09407880
Eugenia S. Hansen
Hemingway & Hansen, LLP
1717 Main Street, Ste. 2500
Dallas, Texas  75225
(214) 292-8301
(214) 739-5209 (fax)
d.hemingway@gte.net
shemingway@hemlaw.org

Corby D. Bell
Texas Bar No. 24036208
Garlitz Bell LLP
3010 LBJ Freeway, Ste. 990
Dallas, TX  75234
(214) 736-7168
(214) 389-4014 (fax)
corby@garlitzbell.com

## **CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing document has been served on all counsel of record via the ECF-Pacer System (via email notification) in the manner indicated this 20rd day of November, 2010.

/s/ D. Scott Hemingway