**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **RAYLON LLC,** | § § § | |
| **Plaintiff,** | § § § | |
| **vs.** | § § | **CASE NO. 6:09-CV-355** |
| **COMPLUS DATA INNOVATIONS, CO.,** *et al.*, | § § § § | |
| **Defendants.** | § | |

| | | |
|---|---|---|
| **RAYLON LLC,** | § § § | |
| **Plaintiff,** | § § § | |
| **vs.** | § § | **CASE NO. 6:09-CV-356** |
| **ADVANCED PUBLIC SAFETY,** *et al.*, | § § § | |
| **Defendants.** | § § | |

| | | |
|---|---|---|
| **RAYLON LLC,** | § § § | |
| **Plaintiff,** | § § § | |
| **vs.** | § § | **CASE NO. 6:09-CV-357** |
| **EZ TAG CORPORATION,** *et al.*, | § § § | |
| **Defendants.** | § § | |

## ORDER

Before the Court is Defendants' Joint Motion for Rule 11 Sanctions (Cause No. 6:09-cv-355, Docket No. 190; Cause No. 6:09-cv-356, Docket No. 156; Cause No. 6:09-cv-357, Docket No. 146).[1]   After consideration of the parties' positions, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** Defendants' Motion.   The Court **ORDERS** Raylon, LLC's ("Raylon") counsel to pay Defendants $451,381.88, of which Mr. Hemingway shall pay $352,486.40, Mr. Bell shall pay $70,065.78, and Mr. Roth shall pay $28,829.70.

## BACKGROUND

Raylon filed three complaints in late 2009 accusing Defendants Complus Data Innovations, Inc. ("Complus"), Casio America, Inc. and Casio Computer Co., Ltd. (collectively, "Casio"), and Symbol Technologies, Inc. ("Symbol"), among several others, of infringing U.S. Patent No. 6,655,589 ("the '589 Patent").[2]   The '589 Patent, entitled "Identification Investigating and Ticket Issuing System," was filed on August 31, 2001 and issued on December 2, 2003. Docket No. 1-2.   The '589 Patent relates to hand-held computers that read magnetic tape on an identification card (e.g., driver's license), display and transmit information, and print tickets.

By August 2010, all three defendants had filed either a Motion for Summary Judgment of Non-Infringement or a Motion for Judgment on the Pleadings that Raylon's infringement claims were not plausible.   Docket Nos. 8, 25; Cause No. 6:09-cv-356, Docket No. 70.   All three defendants had also filed motions for sanctions under Rule 11(b) against Raylon for asserting frivolous infringement claims.   Docket No. 106; Cause No. 6:09-cv-356, Docket Nos. 52, 62;

---

[1] Unless otherwise noted, all references to the docket refer to Cause No. 6:09-cv-355.

[2] Symbol and Complus are accused in separate cause numbers and Casio was named as a defendant in all three cause numbers.

Cause No. 6:09-cv-357, Docket No. 76.  The Court considered arguments on the motions in conjunction with claim construction at a *Markman* hearing on December 2, 2010.

All of the independent claims of the '589 Patent require a "display being pivotally mounted on said housing."  *See* '589 Patent at col.7 ll.30–31 (claim 1), col.8 ll.56–57 (claim 16), col.9 ll.21–22 (claim 17).  However, each of Defendants' accused devices includes a display that is rigidly mounted to the device's housing.  Raylon proposed the following construction for the "pivotally mounted" display term: "[a]n electronic device attached to a housing for the visual presentation of information, the display capable of being moved or pivoted relative to the viewer's perspective."  Docket No. 138 at 2.  Raylon contended that, consistent with its construction, each accused device satisfies the limitation because the entire hand-held device can be pivoted relative to the viewer.  *See* Docket No. 12 at 11.

At the December 2, 2010 *Markman* hearing, the Court rejected Raylon's construction and granted summary judgment of non-infringement for Defendants.  Docket No. 164 at 23:22–26:11.  The Court then proceeded to hear arguments on Defendants' motions for sanctions under Rule 11(b)(2), but denied the motions even though Plaintiff's constructions were "stretching the bounds of reasonableness."  *Id.* at 38:14–21.  The Court followed this ruling with a written order on March 9, 2011, stating that "[w]hile Raylon's claim construction arguments and infringement theory do stretch the bounds of reasonableness, . . . they do not cross that line."  Docket No. 147 at 4.  On March 31, 2011, Defendants filed motions for attorney's fees and costs pursuant to 35 U.S.C. § 285, 28 U.S.C. § 1927, and the court's inherent powers.  Docket No. 151; Cause No. 6:09-cv-356, Docket No. 101.  On October 31, 2011, the Court denied these motions.  Docket No. 168 at 5.

Defendants appealed this Court's decisions on Rule 11, § 285, and § 1927 to the United States Court of Appeals for the Federal Circuit.  On December 7, 2012, the Federal Circuit vacated this Court's findings on Rule 11 and § 285.[3]  *Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1371 (Fed. Cir. 2012) ("*Raylon Appeal*") *cert. denied*, 134 S. Ct. 94 (2013). With respect to Rule 11, the Federal Circuit identified Raylon's claim construction of the "pivotally mounted" term as "a prime example of a construction that falls below" a threshold where it becomes "so unreasonable that no reasonable litigant could believe it would succeed." *Id.* at 1368.  Thus, the Federal Circuit found that under the objective reasonableness standard of Rule 11(b)(2), "Raylon's claim construction (and thus infringement contentions) were frivolous."[4]  *Id.*

Further, the Federal Circuit held that this Court abused its discretion by failing to consider Symbol's arguments that some of Raylon's other claim constructions and infringement theories were also objectively unreasonable.  *Id.* at 1369.  For instance, the '589 Patent's independent claims require "a printer assembly being mounted in said interior of said housing." *See* '589 Patent at col.7 ll.32–33 (claim 1), col.8 ll.58–59 (claim 16), col.9 ll.23–24 (claim 17). The Federal Circuit explained that "Raylon's position that the printer could be in an entirely different housing from the rest of the components is objectively unreasonable and an independent violation of Rule 11 with respect to Symbol, whose products lack a printer entirely." *Raylon Appeal* at 1370.

---

[3] The Federal Circuit left this Court's "denial of attorneys' fees and costs under 28 U.S.C. § 1927 undisturbed" noting that "[e]stablishing attorney misconduct under § 1927 implicates a higher level of culpability than Rule 11."  *Raylon Appeal* at 1370 n.6.

[4] The Federal Circuit noted that because it found "Raylon's claim construction of 'pivotally mounted' frivolous," it did not need to "reach whether Raylon's infringement contentions serve as an independent basis for imposing Rule 11 sanctions."  *Raylon Appeal* at 1369 n.4.

In light of its findings that Raylon had violated Rule 11(b), the Federal Circuit remanded the cases to this Court "for a determination of an appropriate sanction." *Id.* The Federal Circuit instructed that this Court "should weigh Raylon's multiple frivolous arguments with respect to Symbol's products when crafting an appropriate sanction." *Id.* The Federal Circuit remanded these cases back also "to reconsider, in light of [the Federal Circuit's] decision, whether these cases are exceptional under § 285." *Id.*

On remand, Defendants abandoned their § 285 claims against Raylon because Raylon was insolvent. Docket No. 190 at 1. Therefore, the only remaining issue for the Court to decide is the appropriate sanction against Raylon's counsel for their violation of Rule 11.[5]

The parties present the Court with a spectrum of possible sanctions. Defendants contend that the only appropriate Rule 11 sanction for a wholly frivolous case is an award of all reasonable attorneys' fees and expenses expended in defense of this case, totaling approximately $1.4 million, of which Casio seeks $1,033,783.21, Complus - $171,034.96, and Symbol - $181,695.15. *Id.* At the very least, Defendants argue, Raylon's counsel should be disgorged of the settlement proceeds (approximately $300,000) they received from other defendants who settled early in these cases and who Raylon had accused under the same frivolous infringement theories. Docket No. 204 at 2.

Raylon's counsel respond that the Federal Circuit's published opinion has already had an adverse impact on their practices and reputations such that no monetary sanction is necessary to carry out the deterrent purpose of Rule 11 sanctions. Docket No. 197 at 2. To the extent that the Court finds a monetary sanction is warranted, Raylon's counsel argue, such monetary sanction

---

[5] Monetary sanctions for violations of Rule 11(b)(2) may be imposed only against a party's attorneys, not the represented party itself. FED. R. CIV. P. 11(c)(5)(A).

should be limited to the attorneys' fees and expenses Defendants incurred during the claim construction proceedings (approximately $190,000) rather than the entire case. *Id.* at 24–25.

Finally, the parties dispute whether all of Raylon's lawyers and law firms should be held jointly and severally liable for the sanction.   The Court heard arguments at a hearing on the instant Motion on February 25, 2015.

## ANALYSIS

Rule 11 provides that once a violation has been established, "the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation."  FED. R. CIV. P. 11(c)(1).  The Fifth Circuit has recognized that "the district court is vested with considerable discretion in determining the 'appropriate' sanction to impose upon the violating party."  *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 876–77 (5th Cir. 1988).  However the Court's discretion is bounded such that "[a] sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated."  FED. R. CIV. P. 11(c)(4); *see also Mercury Air Grp., Inc. v. Mansour*, 237 F.3d 542, 548 (5th Cir. 2001) ("[C]ourts must impose the least severe sanction on attorneys and parties who violate Rule 11."); *Thomas*, 836 F.2d at 878 ("[T]he sanction imposed should be the least severe sanction adequate to the purpose of Rule 11.").

## A.  *The Parties' Proposed Sanctions*

### 1.  *Defendants' Proposal of Full Attorneys' Fees and Expenses: ~ $1.4 million*

Defendants contend that the appropriate sanction in this case is an award of all reasonable attorneys' fees and expenses incurred by Defendants throughout the entire litigation (approximately $1.4 million).  Docket No. 190 at 1.  Defendants argue that this is the only appropriate sanction in the Fifth Circuit for a "wholly frivolous" case.  *See id.*  Further,

6

Defendants elaborate on Raylon's conduct and other allegedly frivolous arguments which had not been previously presented to the Court in any pleadings.  Casio and Complus argue that "Raylon's counsel needlessly expanded the case" by "asserting infringement of *every* claim, by *every* Casio model, under essentially *every* infringement theory," despite clear signs that the accused devices did not meet multiple claim limitations.[6]  *Id.* at 6.  Defendants also submit that they warned Raylon's counsel from the outset of this litigation that Raylon's infringement theories were untenable.  *Id.* at 5–6.

In response, Raylon's counsel provide explanations for Raylon's positions to help the Court "understand why Raylon's counsel proceeded the way they did."[7]  Docket No. 197 at 16. Raylon's counsel note that Raylon had obtained two experts' affidavits that supported its

---

[6] In addition to the "pivotally mounted" limitation, Casio and Complus identify other claim limitations that they argue the accused products do not meet.  For example, although each asserted claim "requires a 'data reading means for reading the computer readable magnetic tape on the identification card,'" and all claims "require an 'elongated slot' for selectively receiving an identification card," two of the accused Casio models do not have a magnetic card reader. Docket No. 190 at 7–9 (quoting '589 Patent at claims 1, 16, 17).  Also, two of the independent claims "require a means for 'global positioning,'" but none of the accused Casio products include global positioning means.  *Id.* at 10 (quoting '589 Patent at claims 16, 17).  Further, two claims "require an antenna 'pivotally mounted on one of a pair of side walls' of the housing" but no products have antennas that are pivotally mounted on a side wall.  *Id.* at 10–11 (quoting '589 Patent at claims 8, 17).  Finally, Casio and Complus contend that their products do not meet the "disk drive" limitation of claim 10 because the products have solid state memory rather than memory involving a rotating disk.  *Id.* at 11.
 Likewise, Symbol identifies other "baseless claims made by Raylon in its claim charts and elsewhere" in addition to Raylon's "pivotally mounted" display and printer "mounted in said interior of said housing" constructions.  *Id.* at 13.  Symbol argues that its accused products do not have an "elongated aperture" associated with the print assembly as required by the claims.  *Id.* Also, like Casio and Complus, Symbol contends that its products do not have an "elongated slot for receiving an identity card" or "an antenna pivotally mounted on one of a pair of side walls of the housing."  *Id.* (emphasis and internal quotation marks omitted).

[7] For instance, with respect to the card reader, antenna, and global positioning limitations, Raylon's counsel understood that the accused models may be combined with external "snap-on" or "plug-in" devices that contain these functionalities.  Docket No. 197 at 17–18.

infringement theories before it filed suit.  *Id.*  With respect to Defendants' warnings to Raylon, Raylon's counsel contend that such a warning "is not an uncommon communication in most cases."  *Id.*  Furthermore, Raylon's counsel argue that the settlements Raylon had received from other defendants that were originally parties to this litigation "supported Raylon's view that its case was not objectively unreasonable."  *Id.*

Defendants' proposed Rule 11(b)(2) sanction of approximately $1.4 million is not the least severe sanction available to achieve the stated goal of deterrence.[8]  Although Rule 11 and Fifth Circuit precedent allow monetary sanctions that include reasonable attorneys' fees and expenses, they do not require the imposition of such sanctions.  *See Thomas*, 836 F.2d at 877 ("While attorneys' fees and reasonable expenses are expressly provided for by the rule as appropriate sanctions, the court possesses the discretion to tailor sanctions to the particular facts of the case.").  The cases cited by Defendants do not establish a rule that attorneys' fees awards are always the appropriate sanction for Rule 11 violations.  Rather, they support the conclusion that district courts have the option, in their discretion, to award such sanctions if they are appropriate in light of the facts of the case.  *See, e.g.*, *Granader v. McBee*, 23 F.3d 120, 124 (5th Cir. 1994) ("When the district court stated that [Plaintiff's] suit was wholly frivolous and should

---

[8]  While an award of all attorneys' fees and expenses might be an appropriate "exceptional case" remedy under 35 U.S.C. § 285 against the party Plaintiff, Raylon, it does not necessarily follow that it would be an appropriate Rule 11(b)(2) sanction against Raylon's counsel.  The Supreme Court's recent guidance on § 285 and the Federal Circuit's determinations regarding the frivolity of this case would certainly make this case a good candidate for exceptional case status under § 285, but Defendants have elected not to pursue this claim on remand.  *See Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014) ("District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances."); *TechRadium, Inc., v. FirstCall Network, Inc.*, No. CIV.A. 13-2641, 2015 WL 862326, at *5–6 (S.D. Tex. Feb. 27, 2015) (surveying district court § 285 opinions issued since *Octane Fitness* and identifying the situation where "the plaintiff knew or should have known that its claim was meritless or lacked substantive strength" as one of "the most commonly cited ways to establish exceptionality").

not have been brought, it explained why the award of [Defendant's] attorney's fees was the least severe sanction adequate to serve the purposes of Rule 11."). Further, the Fifth Circuit has held that "the appropriate sanction in a given case may be an award to the adversary of some amount less than all of its reasonable expenses incurred as a result of the violation." *Childs v. State Farm Mut. Auto. Ins. Co.*, 29 F.3d 1018, 1027 (5th Cir. 1994).

Deterrence, rather than compensation, has long been recognized as the primary purpose to be achieved by Rule 11 sanctions. Between 1983 and 1993, the rule provided that upon finding a violation of the rule, "the court . . . shall impose . . . an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee." FED. R. CIV. P. 11 (1983). Interpreting this version of the rule, the Supreme Court stated that "the central purpose of Rule 11 is to deter baseless filings in district court" and that "Rule 11 is not a fee-shifting statute." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393, 409 (1990); *see also Bus. Guides, Inc. v. Chromatic Commc'ns Enterprises, Inc.*, 498 U.S. 533, 553 (1991) ("The main objective of the Rule is not to reward parties who are victimized by litigation; it is to deter baseless filings and curb abuses."); *Pavelic & LeFlore v. Marvel Entm't Grp.*, 493 U.S. 120, 126 (1989) ("The purpose of the [provision of Rule 11 directing responsibility to the signer] . . . is not reimbursement but 'sanction' . . . .").

In 1993, Rule 11 was amended to explicitly provide for sanctions that are alternative to full awards of attorneys' fees. *See* FED. R. CIV. P. 11(c)(2) (1993) ("[T]he sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct

9

result of the violation.").[9]  The 1993 advisory committee note explains that "the purpose of Rule 11 sanctions is to deter rather than to compensate" and that sanctions involving payment to the injured party are provided for "under unusual circumstances."  FED. R. CIV. P. 11 advisory committee's note to 1993 amendment.

The Court acknowledges that other policy objectives aside from deterrence may be considered when crafting an appropriate sanction.  *See Thomas*, 836 F.2d at 877 (cautioning that whether "sanctions are viewed as a form of cost-shifting . . . or as a form of punishment . . . , *the imposition of sanctions pursuant to Rule 11 is meant to deter attorneys from violating the rule*" (quoting *Donaldson v. Clark*, 819 F.2d 1551, 1556 (11th Cir. 1987)).  For instance, the rule also has compensatory and punitive purposes.  *See id.* at 879 ("What constitutes 'reasonable expenses' and a 'reasonable attorney's fee' within the context of Rule 11 must be considered in tandem with the rule's goals of deterrence, punishment, and compensation.").  While "sanctions are designed to deter frivolous lawsuits," they "also insure, to a large degree, that victims of frivolous lawsuits do not pay the expensive legal fees associated with defending such lawsuits." *Id.*  (quoting *United Food & Commercial Workers v. Armour & Co.*, 106 F.R.D. 345, 348–49 (N.D. Cal. 1985)).  To the extent a party requests Rule 11 attorneys' fees and costs, that party "has a duty to mitigate those expenses, by correlating his response, in hours and funds expended, to the merit of the claims."  *Id.*  However, "when a court's *primary* purpose in imposing sanctions is to deter, not to compensate," the "relevant considerations" for determining the reasonableness of any fees and expenses to be imposed "become the conduct and resources of the party to be sanctioned."  *Id.* at 881.

---

[9] This language is modified stylistically in the current version of Rule 11 as amended in 2007. *See* FED. R. CIV. P. 11(c)(4).

Defendants' requested sanction of approximately $1.4 million imposed against two single-attorney firms and one three-attorney firm[10] under these circumstances is far in excess of what is necessary for adequate deterrence.  *See View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 988 (Fed. Cir. 2000) (affirming a district court's reduction of a Rule 11 attorneys' fees lodestar amount by twenty-five percent under the rationale that "a sizable sanction will be detrimental to the well-being of a small law firm"); FED. R. CIV. P. 11 advisory committee's note to 1993 amendment (identifying the question of "what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case" as a "proper consideration[]" in determining an appropriate sanction).

### 2. *Raylon's Proposal of Nonmonetary Sanctions: Zero Dollars*

Raylon's counsel argue that "this case does not warrant any Rule 11 sanctions in light of the deterrent impact the Federal Circuit's published *Raylon* decision has already had, and will continue to have into the future."  Docket No. 197 at 2.  They argue that the Federal Circuit's *Raylon* decision has had, and continues to have, "a devastating negative impact on the professional careers of all of Raylon's counsel" and that this is a sufficient sanction.  *Id.* at 7.

While this Court does not doubt that these Rule 11 proceedings, both at the Federal Circuit and in this Court on remand, have had an adverse impact on Raylon's counsel, a sanction limited to a rebuke from the courts is not, alone, an appropriate sanction in this case.  Although Rule 11 permits a sanction of "nonmonetary directives," a nonmonetary sanction in this case would not "suffice[] to deter repetition of the conduct or comparable conduct by others similarly situated."  FED. R. CIV. P. 11(c)(4).  To the contrary, a nonmonetary sanction would only show others similarly situated that they can file frivolous cases, from which they may ultimately profit

---

[10] *See* Docket No. 197 at 8.

11

by exacting cost-of-defense settlements, with the only consequence being harsh words from a Court.  And, a solely nonmonetary sanction would completely neglect any compensatory aspect of Rule 11 sanctions, particularly where Defendants have incurred substantial expenses as they have in this case.  *See Thomas*, 836 F.2d at 879.

### 3. Raylon's Proposal of Partial Attorneys' Fees and Expenses: ~ $190,000

Raylon's counsel argue next that if an award of attorneys' fees is the appropriate sanction, the award should be limited to the fees Defendants incurred during the claim construction proceedings, approximately $190,000.[11]  Docket No. 197 at 24–25.  Raylon's counsel submit that because the Federal Circuit found that two claim constructions were frivolous, the specific pleading that violated Rule 11 was Raylon's Opening Claim Construction Brief, filed on October 23, 2010.  *Id.* at 22.  Because the Court granted Defendants summary judgment at the *Markman* hearing on December 2, 2010, Raylon's counsel contend that only the fees Defendants incurred between those two dates were "directly and unavoidably caused by the violation."  *Id.* at 23 (quoting FED. R. CIV. P. 11 advisory committee's note to 1993 amendment).

Such a narrowly limited attorneys' fees sanction is inadequate.  Claim construction is at the heart of all patent cases.  Early evaluation of claim construction is important and affects the very decision of whether a case has enough merit to file.  Although the Federal Circuit noted that it "need not reach whether Raylon's infringement contentions serve as an independent basis for imposing Rule 11 sanctions," it specifically held that "Raylon's claim construction (*and thus infringement contentions*) were frivolous."  *Raylon Appeal* at 1368, 1369 n.4 (emphasis added).

---

[11] By Raylon's counsel's calculations, Defendants' attorneys' fees that were incurred over this time frame amount to $144,421.54 (plus $6,547.40 for local counsel) for Casio, $13,978.00 (plus $1,102.50 for local counsel) for Complus, and $17,100.00 (plus $6,797.00 for local counsel) for Symbol.  Docket No. 197-11, Ex. 11 at 21.

Thus, Raylon's positions on its claim constructions relate back to the entire suit against Defendants.[12]   The fact that the accused devices could not infringe the '589 Patent absent an unreasonable reading of the claims should have been evident during Raylon's pre-suit investigation before it initiated these lawsuits.[13]

### 4. Disgorgement of Settlement Proceeds: $300,921.25

Defendants argue that a sanction of substantial fees is necessary because "allowing Raylon's counsel to retain the hundreds of thousands of dollars they made pursuing these frivolous claims against other defendants who chose to settle rather than fight will deter no one." Docket No. 204 at 2.   In 2010, before claim construction proceedings had commenced, Raylon settled with three groups of defendants that were originally parties to these cases.   Raylon's counsel do not dispute that the settling defendants had been accused under the same or similar infringement theories that the Federal Circuit found to be unreasonable.   *See* Docket No. 197 at 16 ("At the time, Raylon's counsel believed that the actions of three groups of settling defendants also supported Raylon's view that its case was not objectively unreasonable.").   From these settlement proceeds, Raylon's counsel collectively received $300,921.25 after deducting costs and expenses.   Raylon Hr'g Ex. No. 1.

The Court agrees with Defendants that, at minimum, Raylon's counsel should not be permitted to profit from their pursuit of frivolous claims.   Any sanction that would allow

---

[12] Hints of Raylon's frivolous infringement theories are also apparent in Raylon's First Amended Complaints filed in October 2009 in the '356 case and January 2010 in the '355 case, in which Raylon alleges that "[t]he displays for each of the [accused devices] . . . can be viewed at multiple angles of observation by moving or pivoting the handheld device."   Docket No. 28 at 6; Cause No. 6:09-cv-356, Docket No. 4 at 6.

[13] At least with respect to the "pivotally mounted" display limitation, this case is not one where discovery is necessary to determine whether the accused products plausibly meet the limitation under a non-frivolous claim interpretation.

Raylon's counsel to walk away in a better financial position than when they had started risks encouraging others to file baseless lawsuits.  Therefore, a sanction that includes disgorgement of Raylon's counsel's settlement proceeds is appropriate in this case.

### B.  The Court's Sanction - Disgorgement Plus 50% Penalty:  $451,381.88

Mere disgorgement of Raylon's counsel's profits is not sufficient to carry out either the rule's primary purpose of deterrence or its other objectives of punishment and compensation.  A sanction that returns offending counsel to their original financial position, discounting the typical expenses associated with litigation, has little deterrent value.  If the worst result that one could expect when filing a frivolous lawsuit is that one might not profit from the venture, then one is not deterred from attempting the pursuit.  A disgorgement sanction alone has no greater deterrent effect than the risk that any plaintiff's attorney takes when embarking on a non-frivolous case under a pure contingency fee arrangement.  Even meritorious cases can be lost, but frivolously unmeritorious cases should never be brought.

From a compensatory standpoint, a sanction should provide some relief to the parties who were forced to defend against these claims and who have sought to hold Raylon and its counsel accountable.  Although the sanction award should not be so large as to encourage parties to pursue Rule 11 claims where they are not warranted, the compensation also should not be so small as to discourage enforcement of the rule when it is necessary to deter litigation abuse.

In light of the foregoing, the Court is of the opinion that the appropriate sanction in this case is disgorgement of Raylon's counsel's settlement proceeds ($300,921.25) plus an additional 50% penalty on that amount ($150,460.63), which together totals $451,381.88 to be paid to Defendants.  This amount in addition to the damage to Raylon's counsel's reputations is, in this Court's opinion, the least severe sanction sufficient to accomplish the deterrence objective of

14

such a sanction.  The Court recognizes that although this sanction is relatively severe by typical

Rule 11 standards, the sanction amounts to significantly less than the approximately $1.4 million

in fees and expenses requested and incurred by Defendants in this case.[14]

### C.  Joint or Several Liability of Raylon's Counsel

Defendants contend that each of the three law firms that represented Raylon in these

cases should be held jointly and severally liable for the full amount of the sanction.  Docket No.

190 at 22.  Defendants point to various "offensive pleadings" on which the names of lawyers

from all three firms representing Raylon appeared.  *Id.* at 23.  Raylon's counsel respond that one

of the attorneys, Mr. Hemingway, takes full responsibility for the Rule 11 violations; only he

signed any pleadings in the district court proceedings.  Docket No. 197 at 19.  With regard to the

other attorneys, Raylon's counsel submit, Mr. Bell "supported the case and participated in the

client contacts and infringement analysis, [but] he did not sign any pleadings" and Mr. Roth's

participation extended only to his arguments in opposition to the earlier Motions for Attorneys'

Fees and Sanctions.  *Id.*

On this issue, the Roth Law Firm and Carl Roth (the "Roth Entities") filed a

supplemental response, in which they reiterate that "[t]he Roth Entities' name does not even

appear on any pleadings filed with the Court in connection with Claims Construction

proceedings."  Docket No. 196 at 2.  The Roth Entities argue that their "primary, if not exclusive,

role in this litigation was to defend Raylon's lead counsel against a myriad of sanction motions."

*Id.* at 5.  Although their name appears on Raylon's Amended Complaint in the '356 case, *see*

---

[14]  Although the Court declines to impose an attorneys' fees sanction, the Court notes that
Defendants' calculations of the reasonable fees and expenses they incurred are well-documented
in Defendants' briefing and supporting affidavits.  Accordingly, the Court considers Defendants'
requested amount as an appropriate ceiling below which $451,381.88 is the least severe sanction
necessary for effective deterrence.

Cause No. 6:09-cv-356, Docket No. 4, the Roth Entities contend that the Federal Circuit did not find that this complaint violated Rule 11.  Docket No. 196 at 7.

Defendants cite no authority in the Fifth Circuit that supports their position that joint and several liability between law firms is appropriate under these circumstances.  Here, an attorney or firm who is least responsible for the violation, or who is positioned to benefit least from the violation had it gone unchecked, should not be required to additionally pay for the sanctionable conduct of others more culpable as may be the result under joint and several liability.  Such a sanction would be a greater penalty than that which suffices to deter repetition of the violation. Accordingly, the Court declines to impose joint and several liability in this case.

### D.  Apportionment of the Sanction

Each of the attorneys and firms that represented Raylon were, to differing extents, responsible for the Rule 11 violation.   Rule 11 provides that "the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule *or is responsible for the violation*."  FED. R. CIV. P. 11(c)(1) (emphasis added).  The Rule 11 advisory committee's note to the 1993 amendment explains that the amendment

> permits the court to consider whether other attorneys in the firm, *co-counsel*, *other law firms*, or the party itself *should be held accountable for their part in causing a violation*.  When appropriate, the court can make an additional inquiry in order to determine whether the sanction should be imposed on such persons, firms, or parties either *in addition to* or, in unusual circumstances, instead of *the person actually making the presentation to the court*.

FED. R. CIV. P. 11 advisory committee's note to 1993 amendment (emphasis added).

Affidavits submitted by Raylon's counsel shed light on their relative roles in this litigation.  Mr. Hemingway explains that he "signed all the pleadings filed in this matter; and therefore, [he is] primarily responsible for the filings in this case."  Docket No. 197-4, Ex. 4 at 2. Mr. Bell explains that before this suit was filed, he "analyzed [the patent] and conducted a

16

preliminary, independent claim construction and infringement analysis of [the patent] versus various potential infringing devices."  Docket No. 197-5, Ex. 5 at 4.  Mr. Bell also states that he "did not draft, sign, file, or submit any pleading or document to the Court," but he "did review the documents, including pleadings, correspondence, and the like, that [he] was asked to review by Mr. Hemingway, and [he] provided [his] input and approval on those documents."  *Id.* Finally, Mr. Roth states that he was "not involved in this litigation when it was originally initiated, nor was [he] involved in the original infringement analysis of the defendants' products, or the patent claims construction process."  Docket No. 197-6, Ex. 6 at 2.  However, he and Mr. Hemingway "had discussions about the nature of the lawsuit, pre-suit investigation that had been conducted, and the basis for the infringement allegations," and he ultimately agreed to be available "to assist Mr. Hemingway in this endeavor if the case went to trial."  *Id.* at 2–3. Further, Mr. Roth stated that "[w]hile [he] did not prepare, sign, file or submit [various documents filed in this litigation], all of the pleadings on which [his] name appears in typewritten form were filed with [his] knowledge."  *Id.* at 4.

Despite their respective roles in these cases, all of Raylon's counsel profited from the settlements of lawsuits that were based on the same frivolous infringement theories.  *See* Raylon Hr'g Ex. No. 1.  After expenses, Mr. Bell received $46,710.52, Mr. Roth received $19,219.80, and Mr. Hemingway's firm received $234,990.93 from the settlement proceeds.  *Id.*  The Court finds that the relative amount received by each of Raylon's counsel is a reasonable apportionment ratio for imposition of the sanction.  Accordingly, the Court apportions the sanction between the three counsel such that each counsel shall pay one and a half times the amount that each received from the settlement proceeds.

**CONCLUSION**

The Court has high expectations for all parties and counsel who bring patent infringement cases in this District.  All counsel—whether local or national, with small firms or with large firms—who put their name on a pleading bear the responsibility for not only the potential benefits of that pleading, but also the consequences when the pleading falls below the standards imposed by Rule 11.  An attorney who is presented with the opportunity to file a new case or to join others in pursuing an existing case is obligated to at least ask the hard questions about the quality of the claims.  If the attorney cannot find good answers to those questions, the attorney should withdraw from the case rather than pursue the claims to the significant detriment of opposing party and court resources.

Therefore, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** Defendants' Joint Motion for Rule 11 Sanctions (Cause No. 6:09-cv-355, Docket No. 190; Cause No. 6:09-cv-356, Docket No. 156; Cause No. 6:09-cv-357, Docket No. 146).  The Court **ORDERS** Raylon's counsel to pay Defendants $451,381.88, of which Mr. Hemingway shall pay $352,486.40, Mr. Bell shall pay $70,065.78, and Mr. Roth shall pay $28,829.70.  Further, each law firm shall be jointly liable for (only) the portion of the sanction that is imposed upon the attorney who is employed by that law firm.  *See* FED. R. CIV. P. 11(c)(1) ("Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.").

Consistent with the compensatory aspect of this sanction, Defendants are **ORDERED** to meet and confer and file an agreed apportionment of the total award among Defendants based on

the relative amounts of fees and expenses each Defendant incurred in connection with these cases.[15]

**So ORDERED and SIGNED this 4th day of May, 2015.**

**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**

---

[15] Symbol and Complus do not request sanctions from the Roth Entities.  Docket No. 204 at 10 n.8.  However, because the sanction imposed on the Roth Entities is not calculated based on the circumstances particular to any single defendant, Symbol and Complus may either collect their respective portions of that sanction or designate their portions to be paid to a charitable cause of their choosing.